## THE UNA.

### ACKERMAN v. THE UNA et al.

#### (District Court, S. D. New York. May 11, 1893.)

BAILMENT—SHIPPING—VESSEL IN SHIPYARD—RIGHTS OF OWNER.

> Libelant purchased at trustee's sale a damaged yacht, at that time lying in respondent's shipyard. It was agreed between libelant and respondent that the yacht should remain as she was, in storage, during the winter season, but that she would be launched when wanted at a certain time in the spring. On libel filed to recover possession of the yacht, the court found that, owing to disputes between the parties, respondent had intentionally obstructed libelant in his endeavors to obtain timely possession of his yacht, and held that the right of the owner to have his vessel launched at a proper time by respondent, the bailee, was a right incident to the ownership of the yacht, and a right which passed to her owner in payment of the price agreed on, or a reasonable compensation. *Held*, therefore, that libelant was entitled to the possession of his yacht, to be launched by respondent, and to reasonable damages till launched and delivered for her withholding.

In Admiralty. Libel by J. Fred Ackerman against the yacht Una and John P. Hawkins for possession, and for damages for unlawful detention.

Benedict & Benedict, for libelant.
George A. Black, for respondents.

BROWN, District Judge. The yacht Una, having been injured by collision, was placed in the shipyard of the respondent Hawkins at City Island. On the 21st of December, 1892, she was sold by a trustee appointed by this court in proceedings taken by the owner to limit his liability. Mr. Hawkins attended and was a bidder at the sale. She was purchased, however, by the libelant, who, within a few days afterwards, had certain negotiations with Mr. Hawkins in reference to completing her repair. They could not come to an agreement as to the terms; but it was agreed that Mr. Hawkins should charge $10 per month for storage during the winter season, which was his usual price. He was told that the yacht would be wanted for use with the repairs completed by the beginning of the yachting season on the 1st of June following; and he was requested to state what would be the expense of putting her into the water, there being at that time one other yacht between

her and the marine railway by which such boats are usually launched at Mr. Hawkins' yard. He refused to give any estimate; but by his letter of January 4, 1893, he promised that when the time comes around in the spring he would put her into the water at the usual charge. On the 20th of March the libelant directed her to be launched by the 29th, offering to pay the expense. No attention was paid to this direction. Some planks had been taken from the sides of the yacht by Mr. Hawkins to examine her timbers. The yacht would not float until these planks were replaced, and some canvas also, or other protection, placed over her bow. To repair her properly for service would require, according to the evidence, from four to six weeks. A few hour's work would suffice to put her into a condition to float, so that she could be taken to some other yard to be repaired. Mr. Hawkins has refused to permit any other person to do any work upon her, or to put her in condition to be removed. The libel was filed to recover the possession of the yacht, alleging that defendant Hawkins had wrongfully and maliciously kept the libelant from the use and possession of the boat. The answer admits the sale of the yacht to the libelant, and the delivery of the possession thereof to him, but denies any detention by the defendant.

I have no doubt, upon the evidence in this cause, that the defendant has obstructed and intended to obstruct the libelant in his endeavors to obtain timely possession of his yacht so that she could be properly repaired by the beginning of the yachting season, unless the libelant would put the work of repair in Mr. Hawkins' hands, and accept his own terms as to the price of making the repairs. The defendant understood from the first when the yacht would be wanted, and that she must be repaired by the 1st of June; but by numerous devices he has plainly avoided and evaded all the efforts of the libelant to procure the yacht within a reasonable time to enable the necessary repairs to be done by any one else than Mr. Hawkins. His reason for not launching her in March as directed is that his ways were then and are still occupied by another yacht, the Southern Cross, on which he is making repairs, which are not completed, and which at the trial it was said would not be completed for a week or ten days to come. The Southern Cross was hauled out of the water and put upon the ways by Mr. Hawkins on the 20th of February, some six weeks after he had agreed to move the yacht Una in time, in the spring.

In the defendant's behalf it is contended that he is the absolute master of his own yard; that he is under no obligation to permit any person to come there to do any work, or to do any work himself that he does not choose to do, and that he may do any work he chooses to do in his own time.

I cannot sustain this contention to the extent asserted, upon the bailment of a vessel by the owner and a subsequent sale of the property, either voluntarily, or by the court, under circumstances like the present. The right of the owner to have the vessel launched at the proper time by Hawkins, the bailee, was a right incident to

the ownership of the yacht, arising out of the original bailment, (Story, Bailm. §§ 436--440;) and that right passed to the vendee on payment of the price agreed on, or a reasonable compensation. This right was confirmed by his letter of January 4th. There is no controversy here as to the right, and the offer, of payment for that service. Hawkins was, moreover, a bidder at the sale. It was legally incumbent upon him to launch the yacht, if required, within a reasonable time in the spring after notice, for a reasonable and just compensation, and in time for repair before the 1st of June; and if he would not launch her himself, the original bailor or purchaser at the sale had probably by legal implication a license to remove the yacht himself, and for that purpose to make all preliminary temporary repairs to the yacht that were necessary to enable her to float. However that may be, the course pursued by Mr. Hawkins was manifestly vexatious and obstructive, and, I must find, intentionally so. This made the filing of the libel necessary in order to secure to the libelant the removal of his yacht and a recovery of damages for its detention, in case it was not launched by Hawkins in time for repair by the 1st of June. A decree may, therefore, be entered that the libelant have possession of the yacht to be launched by the defendant Hawkins, and that the libelant recover of him damages for the detention of the yacht at the rate of eight dollars per day from the 3d day of May, 1893, until such launching is effected, and the yacht delivered, that being the latest date which, upon the evidence, could be reasonably allowed to Mr. Hawkins for the fulfillment of his obligation; the libelant to pay on delivery the price of storage as agreed on, and the reasonable cost or price of launching, less the damages here allowed.